**FILED**
**Jun 18, 2025**
**10:45 AM(CT)**
**TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT COOKEVILLE

| | | |
|---|---|---|
| **KIMBERLY REED,** | ) | **Docket No.: 2024-40-5803** |
| **Employee,** | ) | |
| **v.** | ) | **State File No.: 844947-2024** |
| **CRITICAL NURSE STAFFING, LLC,** | ) | |
| **Employer,** | ) | **Judge Robert V. Durham** |
| **And** | ) | |
| **TECHNOLOGY INS. CO.,** | ) | |
| **Carrier,** | ) | |
| **And** | ) | |
| **TROY HALEY, Administrator,** | ) | |
| **Tennessee Subsequent Injury and** | ) | |
| **Vocational Recovery Fund.** | ) | |

---

### EXPEDITED HEARING ORDER GRANTING BENEFITS
### *(DECISION ON THE RECORD)*

---

Ms. Reed asked the Court to order Critical Nurse Staffing to authorize a second opinion on whether surgery is reasonable and necessary to treat her shoulder injury and to furnish treatment for her jaw and ear symptoms. For the following reasons, the Court orders CNS to provide a second opinion for her shoulder injury and a panel of specialists for treatment of any face or head symptoms caused by Ms. Reed's work injury.

### History of Claim

Ms. Reed's request asserted injuries to separate body parts, and she treated simultaneously for both. For that reason, the medical history summary is separated as to each body part.

*Treatment for left shoulder and neck*

According to her Rule 72 statement, Ms. Reed suffered a work-related injury on June 17, 2024. CNS authorized treatment at an urgent care clinic the next day. The clinic

note stated that Ms. Reed said the injury occurred "when she stumbled and had to grab a railing next to her. As she was grabbing the railing, she twisted her arm and immediately felt a burning, sharp pain going from the middle of her left upper arm to her neck." The note does not describe Ms. Reed falling, striking her face or head, or suffering face, head, or ear symptoms.

CNS authorized orthopedist Dr. Kyle Achors to treat Ms. Reed's left shoulder. Dr. Achors's notes do not refer to any complaints of face or ear symptoms. He diagnosed her with a full-thickness left-rotator cuff tear but said she "was not a surgical candidate due to her weight." He prescribed conservative care, including physical therapy. A September physical therapy record described Ms. Reed's injury as occurring when she was holding onto a handrail and got "twisted up." It did not mention Ms. Reed falling, striking her head or face, or suffering from face and ear symptoms.

In December, Ms. Reed saw orthopedist Dr. Patrick Bolt for her continuing neck pain. She described her accident as occurring when "she twisted on a patient's rug rotating her body around. She felt a cracking sensation at the base of her skull[.]" She also reported "some jaw and facial pain on the right side." He prescribed a cervical MRI and physical therapy.

Ms. Reed returned to Dr. Achors in February and reported that her symptoms were unchanged with conservative care. He still did not consider her to be a "reasonable surgical candidate" due to her weight. He ordered a functional capacity evaluation with the goal of placing her at maximum medical improvement. He also noted that Ms. Reed requested a second opinion on surgery, which he thought was reasonable. However, he suspected that a second opinion would "yield a similar treatment plan."

Ms. Reed also returned to Dr. Bolt in February. She still complained of neck pain as well as "ringing in the ears, facial and ear pain, tremors, and dizziness." Dr. Bolt diagnosed her with a cervical strain/sprain and said he was "unsure what to make of her nonorthopedic [sic] complaints." He recommended additional physical therapy for her cervical spine.

At her functional capacity evaluation, Ms. Reed gave a detailed account of her work accident. She said she was:

> leaving the [client's] home to step outside and tripped over a carpet runner. She grabbed the door frame with her left hand, placing a traction force to the left upper extremity and twisted her body toward the wall, hitting the right side of her head on the wall, injuring the side of her head, neck and her jaw.

As for the second surgical opinion, CNS agreed to authorize Dr. William Hovis to evaluate Ms. Reed. After reviewing her medical records, Dr. Hovis declined to see her.

When the nurse case manager asked why in an email, Dr. Hovis's practice manager responded that, "interestingly enough, he just declined to do surgery on a very good patient of ours in a similar situation and said that he would have nothing to add to this particular case." Ms. Reed objected to the admission of the email chain based on hearsay, which the Court sustained.

*Treatment for face and ear*

Ten days after her work injury, Ms. Reed visited her primary care physician for swelling and "oozing" in her right ear that she said had been going on for a week and a half. The doctor diagnosed a right-ear infection and prescribed antibiotics.

Ms. Reed returned in November for right-ear pain and discharge from her ear, nose, and eye since the accident. An exam revealed "mild bulging with no redness" along the right "TM." She also had slight dermatitis on the outside of the right ear and slight swelling in the right ear canal. Ms. Reed claimed these symptoms began after her accident. The nurse practitioner recommended that she see an otolaryngologist. Ms. Reed requested a panel, which CNS denied.

After CNS's refusal, Ms. Reed began treatment in December with otolaryngologist Dr. William Horton. The note describes the work injury as "pt was leaving her house and fell and had a pain that went from her neck to her arm." Ms. Reed said she suffered from drainage in her right ear in July and August that worsened so that by November it had spread to her eye and nose on the right side along with swelling. She also described pain at the base of her head.

Dr. Horton's nurse practitioner did not see any drainage or deformity in Ms. Reed's right ear. The nurse practitioner diagnosed right-ear eczema and prescribed ear drops. She also ordered a maxillofacial CT scan to rule out cerebrospinal fluid leak.

Dr. Horton's next record from March notes that he saw Ms. Reed in December, but the record is not in the file. However, the March record summarized the visit by stating that Ms. Reed showed no evidence of chronic ear infections. Dr. Horton believed the ineffectiveness of antibiotics to relieve her symptoms and her physical exam suggested temporomandibular joint disorder.

The March 25 note goes on to report that Ms. Reed's work injury occurred when she "was coming out [of] a house on the front door and foot got caught, she fell and tore rotator cuff. Since then [sic] has felt like vacuum in her ear, neck pain, and unilateral face swelling." On exam, Dr. Horton noted bilateral TMJ crepitus and tenderness as well as left-malar cheek tenderness. He recommended a TMJ MRI and physical therapy, which her insurance company denied.

3

In response to a causation letter, Dr. Horton stated Ms. Reed's temporomandibular joint disorder primarily arose from her June 17 "trip and fall work accident."

## Findings of Fact and Conclusions of Law

To obtain her requested treatment, Ms. Reed must show a likelihood of prevailing at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2024).

### *Second opinion for shoulder surgery*

Ms. Reed's undisputed evidence establishes she is likely to prove she suffered a left-shoulder rotator cuff tear caused by her work injury. The issue is whether CNS must authorize a second medical opinion to consider whether surgery is reasonable and necessary to treat this injury.

Tennessee Code Annotated section 50-6-204(a)(3)(H) states that "[a]ny treatment recommended by a physician . . . selected pursuant to this subdivision (a)(3) . . . shall be presumed to be medically necessary for treatment of the injured employee." Dr. Achors was Ms. Reed's authorized physician for her shoulder injury, and he refused to operate. However, Dr. Achors said that a second surgical opinion was reasonable and, even though the recommendation was tepid at best, ultimately he made the referral.

CNS argued it gave Ms. Reed a second opinion with Dr. Hovis, who reviewed the medical records and agreed with Dr. Achors that surgery was inadvisable. However, the only evidence CNS submitted regarding Dr. Hovis's opinion was an email chain between a case manager and Dr. Hovis's practice manager. The emails are inadmissible hearsay as to Dr. Hovis's opinion, and Ms. Reed's objection was sustained. Thus, the Court will not consider them.

The Court holds that the admissible evidence establishes that Ms. Reed is likely to prove her entitlement to a second opinion on surgery for her left shoulder.

### *Treatment for Temporomandibular Disorder*

Aside from her shoulder injury, Ms. Reed also asserted that she injured her face and ear in the accident and requested treatment. To support her claim, she offered medical records and a causation letter response from an otolaryngologist that states she suffers from a TMJ disorder primarily caused by her work accident.

CNS countered that none of Ms. Reed's authorized providers documented any symptoms of pain or swelling in her face or jaw until her first visit with Dr. Bolt in November. It also asserted she did not actually describe striking her head and face until the functional capacity evaluation in March.

However, Ms. Reed did report "oozing and swelling" in her right ear to her personal physician in June and said that it started ten days earlier, which would be about the same time as her work accident. Further, the Appeals Board has held that when an employee provides timely notice of a work injury, "there is no statutory requirement that [she] identify every physical condition or symptom [she] believes is related to a work accident at the time notice is given." *Sullivan v. Petree Arbor Lawn & Landscape, Inc.*, 2024 TN Wrk. Comp. App. Bd. LEXIS 43, at *11 (Nov. 13, 2024).

Thus, as in *Sullivan*, the Court holds that Ms. Reed's face and ear complaints and request for treatment "triggered [CNS's] statutory obligation to offer medical treatment for that condition, at least to the extent an authorized provider concluded such treatment was reasonable and necessary as a result of the work accident." *Id.*

Ms. Reed not only requested that CNS meet its obligation in providing care for her jaw and face but also asserted that CNS must authorize Dr. Horton to treat her. The Court acknowledges that an employer who denies medical treatment risks having to pay for unauthorized care. *Hagan v. Potomac Corp.*, 2022 TN Wrk. Comp. App. Bd. LEXIS 5, at *10 (Feb. 9, 2022). But for the reasons below, it will not go so far to say that CNS must authorize Dr. Horton.

The Court agrees with CNS that the absence of documentation of an injury to Ms. Reed's head and face until several months after the accident is relevant, particularly since she claimed for the first time at her functional capacity evaluation that she struck her face on a wall. Nothing in the record illustrates that Dr. Horton was aware of the history documented by other providers. Further, until the most recent records, Ms. Reed's head and face complaints appeared to be more about discharge than pain and swelling. Finally, Dr. Horton's records as well as the causation letter refer to Ms. Reed falling, and it is unclear whether he believed Ms. Reed struck her face or head after falling to the ground.

Thus, despite Dr. Horton's causation opinion, the Court holds that under the evidence presented, Ms. Reed is not likely to prove that her current ear and face symptoms are causally related to her work injury. However, since she is likely to prove she suffered a compensable work accident, she is entitled to a panel of otolaryngologists to evaluate and treat any work-related injury to her head and face. *Hibbitts v. Royal Guttering*, 2021 TN Wrk. Comp. App. Bd. LEXIS 10, at *5 (Mar. 23, 2021).

IT IS, THEREFORE, ORDERED:

1. CNS must provide a panel of orthopedists from which Ms. Reed may select a physician to give a second opinion as to the reasonableness and necessity of surgery to repair her left rotator cuff.

2. CNS must provide a panel of otolaryngologists from which Ms. Reed may select a physician to evaluate and treat any injuries to her head and face that arose primarily out of her work-related injury.

3. This case is set for a Scheduling Hearing on **August 11, 2025, at 10:00 a.m. Central Time**. The parties must call 615-253-0010. Failure to appear might result in a determination of the issues without the party's participation.

4. Unless interlocutory appeal of this Expedited Hearing Order is filed, compliance with this Order must occur by seven business days of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance by email to WCCompliance.Program@tn.gov by the compliance deadline. Failure to do so may result in a penalty assessment for non-compliance. For compliance questions, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov.

**ENTERED June 18, 2025.**

_____
**ROBERT DURHAM, JUDGE**
**Court of Workers' Compensation Claims**

**APPENDIX**

<u>Exhibits</u>:

1. Rule 72 Declaration of Ms. Reed
2. Emails between counsel regarding medical treatment
3. Medical records filed with Request for Expedited Hearing
4. Dr. Horton's causation opinion
5. Panel provided for second opinion regarding surgery with accompanying emails from counsel
6. Dr. Achors's February 18, 2025 record
7. Medical Records attached to CNS's Notice of Objection

**CERTIFICATE OF SERVICE**

I certify that a copy of the Order was sent as indicated on June 18, 2025.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Lane Moore, Jenna Johnson | | | X | lane@moorerader.com jenna@moorerader.com |
| Gregory Fuller, Nick Lastra | | | X | ghfuller@mijs.com nalastra@mijs.com |
| Patrick Ruth | | | X | Patrick.Ruth@tn.gov |

_____

**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**



<u>Right to Appeal:</u>

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    - If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    - If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

    When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

    **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties
**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.


_____

*[Signature of appellant or attorney for appellant]*